IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NATHAN ROWAN, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>ALOHA HAWAII TOURS INC., a Nevada corporation, and ARRIVIA, INC., a Delaware corporation,<br><br>*Defendants.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Nathan Rowan ("Plaintiff Rowan" or "Rowan") brings this Class Action Complaint and Demand for Jury Trial against Defendant Aloha Hawaii Tours Inc. ("Defendant Aloha Hawaii Tours" or "Aloha Hawaii Tours") and Defendant Arrivia, Inc. ("Defendant Arrivia" or "Arrivia") to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") and the Maryland Telephone Consumer Protection Act ("MDTCPA") by placing calls to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Rowan, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1. Plaintiff Rowan is a resident of Baltimore, Maryland.

2. Defendant Aloha Hawaii Tours is a Nevada registered corporation headquartered in Kailua, Hawaii.

1

3.       Defendant Arrivia is a Delaware registered company headquartered in Scottsdale, Arizona.

**JURISDICTION AND VENUE**

4.       This Court has Federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

5.       This Court has personal jurisdiction over the Defendants because they do business in this District and directed their wrongful conduct into this District toward Plaintiff Rowan who resides in this District.

**INTRODUCTION**

6.       As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7.       When Congress enacted the TCPA in 1991, it found that Americans were receiving more than 18 million robocalls every day. 105 Stat. 2394 at § 2(3).

8.       By 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million robocalls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9.       The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

11.     According to online robocall tracking service "YouMail," 4.2 billion robocalls were placed in March 2026 alone, at a rate of 135.7 million per day. www.robocallindex.com (last visited April 19, 2026).

12.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

13.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

14.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

### COMMON ALLEGATIONS

15.     Aloha Hawaii Tours sells wholesale travel membership packages to consumers throughout the US, including in Maryland where the Plaintiff is located.[3]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://www.alohahawaiitours.info/

16.    Arrivia provides travel membership packages to consumers and companies throughout the world.[4]

17.    Aloha Hawaii Tours is a reseller of Arrivia travel membership packages:



FAQ | Take A Test Drive

**FULFILLMENT TERMS AND CONDITIONS**

These Fulfillment Terms and Conditions ("Terms and Conditions") set forth a legally binding agreement between a third-party fulfillment provider Arrivia, Inc. ("Arrivia" "We" "Us" and "Our") and each person who browses this site, shops for travel, and/or purchases products and services marketed herein, including the guests of the purchaser (Collectively referred to herein as a "You", "Your", "Purchaser") By purchasing products and services through Arrivia, Purchaser acknowledges and agrees to be bound by these Terms and Conditions and any Travel Provider Terms which are incorporated herein. Additionally, Purchaser agrees that it is Purchaser's sole responsibility to inform any traveling companion(s), guests, or the users of any product or service purchased through Arrivia of the contents of these Terms and Conditions and all applicable Travel Provider Terms.[5]

18.    Aloha Hawaii Tours states on its Better Business Bureau ("BBB") page that Arrivia is its travel technology and fulfillment partner:

---

[4] https://www.linkedin.com/company/arrivia/about/
[5] https://savings.alohahawaiitoursandtravel.com/PrivacyPolicy

4



**Business Response**
Date: 02/09/2026

Aloha,
Thank you for the opportunity to respond to this complaint. We take all feedback seriously and have conducted a thorough review of the members concerns and our internal records. Please see our point-by-point response below.
**(1) Allegation of BBB** ██████ **start="281" data-end="284"> At no point do we represent Aloha Hawaii Tours & Travel as BBB-accredited. During our webinar, we clearly explain our business structure and disclose that Arrivia, our travel technology and fulfillment partner, is BBB-accredited with an A+ rating. This information is factual and verifiable. Aloha Hawaii Tours & Travel acts as the distributor and member support provider for** ██████ **platform, and we remain accountable for the member experience.** [6]

19.     Aloha Hawaii Tours places cold calls to consumers to generate business on behalf of Arrivia.

20.     Current and past Aloha Hawaii Tours employees state that they had to generate business through cold calling, including:



**Ann Jossan Mayor**
4th Year Computer Engineering Student | Full-Stack Developer | Property Manager at Airbnb (Direct Client) | Seeking for technica

**Senior Travel Advisor**
Aloha Hawaii Tours & Travel · Freelance
Aug 2023 – Present · 2 yrs 9 mos
Honolulu County, Hawaii, United States · Remote

As a Senior Travel Advisor, I specialize in reaching out to potential clients, managing leads, and driving sales through proactive engagement and exceptional customer service. My responsibilities include contacting leads via cold calling, emails, and follow-ups to identify travel needs and provide tailored travel solutions. I manage and nurture a pipeline of leads, converting inquiries into bookings while building strong client relationships to ensure repeat business. With extensive knowledge of travel destinations, packages, and industry trends, I craft personalized itineraries, handle reservations, and deliver outstanding travel experiences. My role also involves meeting sales targets, maintaining detailed records of client interactions, and staying updated on market trends to identify new opportunities for growth.

▽ Lead Generation, Cold Calling and +4 skills [7]

---

[6]
https://www.bbb.org/us/hi/kailua/profile/sightseeing-tours/aloha-hawaii-tours-travel-1296-53072942/complaints
[7] https://www.linkedin.com/in/ann-jossan-mayor/





21.    Arrivia knows that corporations like Aloha Hawaii Tours are engaging in telemarketing to generate business.

22.    On TrustPilot.com, consumers have posted complaints to Arrivia about calls and texts that they received, including:

---

[8] https://us.bold.pro/my/isabel-saban-241015175437

[9] https://www.linkedin.com/in/thim-carl-paul-palisoc-771084168/

6

 **Tracie**
US · 7 reviews

★★★★★    Feb 5, 2026

**Would not recommend**

I have been contacted twice to attend a zoom for a free cruise on a prominent cruise line. After agreeing you receive an email from Alohahawaiitours. The first question is your age, the second your income. During the zoom, attendees were called out for not paying attention. I was disconnected from both zooms, not sure why, of course no explanation is given, just you have been removed. This time I did find out the company name is Arrivia. This is not a timeshare, it is a membership program. Be careful, read very carefully all contracts they want you to sign. This is an up front purchase with a yearly account fee. I would recommend if you receive a message from this company, you immediately hit delete. [10]

 **Ros**    Aug 10, 2024
CA · 1 review

★★★★★

**SCAM**

The Philippine woman who called me (Bea), and emailed and text, asked my husband and I to listen to a 45 minute webinar for Arrivia vacation. After which we we would receive a vacation gift. We attended the webinar and did the one on one after too and then talked to another person who verified our email and contact to send a free vacation gift. It was supposed to take three minutes but two DAYS later still nothing! This is definitely a SCAM!!

Called the Bea lady back and told her what happened and she asked if we finished the webinar or cut it short. I told her we did it all the way to the end. I further explained what happened and she said stick to what I'm asking you only! I told her she was being rude and then she said to calm down! Umm excuse me but I'm not a child we were promised something and we did what was asked of us although we were on our way to work because she promised us a gift for doing so. When it came to holding up their end they start being rude and don't follow through! If this is the sales pitch and it's a crock you can only imagine what the vacation club is like. Not trustworthy and a big lie! Do not waste your money on this SCAM! [11]

---

[10] https://www.trustpilot.com/review/www.arrivia.com?page=2
[11] Id.

7

23.    Similar complaints have been posted on the Google Reviews page for Arrivia, alleging unsolicited telemarketing, including:



24.    Consumers have posted similar reports directly to Arrivia through its BBB page, including:

---

[12] https://www.google.com/search?q=arrivia
[13] Id.

**Sarah P**

**Date:** 09/27/2024

⭐☆☆☆☆

I received a call, email, and text from a woman named [redacted] from the [redacted], who asked me to participate in a 45-minute webinar for Arrivia Vacation. She mentioned I would receive a vacation gift and $200 after attending. I attended the webinar, which lasted about 1.5 hours, and then I participated in a one-on-one session. After that, I spoke with another representative who confirmed our email and contact information to send the vacation gift. [redacted] reached out again, but instead of offering the initial $200, she proposed an additional $200 if I could get three friends to watch the same video. I responded that I would appreciate receiving the first $200 before proceeding further, but then she stopped communicating. This is definitely a SCAM!!

 **Arrivia Inc**

**Date:** 10/07/2024

Dear Ms. [redacted] we sincerely apologize for your experience. We tried to contact you via email on September 30, October 1, and October 2 to gather more information as we do not have an agent by the name of [redacted]. Further research would allow us the opportunity to better assist you as well as prevent potentially fraudulent practices by other companies. Please contact me at [redacted] to provide additional information. I look forward to hearing from you. Kindest regards, [redacted]., VP of Customer Commitment. [14]

25.     Plaintiff Rowan had a previous lawsuit against Arrivia alleging unsolicited telemarketing calls that were placed by Allen Marketing Group, Inc.[15]

26.     Arrivia continues to contract with sellers like Aloha Hawaii Tours because their unlawful telemarketing results in consumers purchasing their travel membership packages.

27.     As a result of the above, Arrivia was aware of, consented to, and/or ratified Aloha Hawaii Tours' making the telemarketing phone calls to consumers described above.

28.     Arrivia earns a profit from every travel membership package that is generated by a seller like Aloha Hawaii Tours.

29.     As will be shown, when Plaintiff Rowan agreed to attend a Zoom call, a speaker solicited an Arrivia travel membership package.

---

[14] https://www.bbb.org/us/az/scottsdale/profile/travel-club/arrivia-inc-1126-36004895/customer-reviews?page=2

[15] Case 1:2021cv00587 – Rowan v. Arrivia Inc. et al – filed 04/27/2021

9

30.    During this call presentation, the speaker provided a walkthrough of the Arrivia travel membership itself, explaining how the bookings are made, and how to navigate the Arrivia travel membership website through the website for Aloha Hawaii Tours – members.alohahawaiitoursandtravel.com.

31.    In fact, the agent solicited discounted Arrivia travel memberships, as per the screenshot that Plaintiff captured during the sales presentation:



32.    The Federal Communication Commission has instructed that corporations such as Arrivia may not avoid liability by having their telemarketing outsourced:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

10

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

33.     Neither Plaintiff Rowan nor the members of the proposed Classes ever provided Defendants and/or their agents with prior express written consent to receive the telephone calls at issue.  Defendants do not have any record of express written consent to place telemarketing calls to Plaintiff or to members of the proposed Classes.

34.     Defendant Aloha Hawaii Tours willfully violated the TCPA. Aloha Hawaii Tours was aware that it was making calls that violated each element of the TCPA, as alleged above.

35.     Arrivia is liable for the willful TCPA violations of its agent, Aloha Hawaii Tours, committed within the scope of Arrivia's authority.

36.     In response to these calls, Plaintiff Rowan brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA and MDTCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF ROWAN'S ALLEGATIONS

37.     Plaintiff Rowan is the sole owner and user of his cell phone number ending in 5605.

38.     Plaintiff Rowan registered his cell phone number on the DNC on June 4, 2005.

39.     Plaintiff Rowan has owned his cell phone number for over 10 years.

40.     Plaintiff Rowan uses his cell phone number for personal use only as one would use a landline telephone number in a home, including to communicate with family and friends.

41.     Plaintiff Rowan has never advertised or used his cell phone as a business contact number.

11

42.     The calls that Plaintiff Rowan received from the Defendants were received more than 31 days after the Plaintiff registered his cell phone number on the DNC.

43.     Plaintiff Rowan resided in Baltimore, Maryland during the time he received calls from the Defendants.

44.     Plaintiff received unsolicited calls from the Defendants on the following dates:

- March 24, 2026 from 808-795-5075;

- March 27, 2026 from 808-818-8039;

- March 29, 2026 from 808-818-8039;

- March 30, 2026 from 808-795-5075;

- March 31, 2026 from 808-818-8039; and

- April 1, 2026 from 808-818-8039.

45.     None of the aforementioned calls was answered.

46.     On April 2, 2026, Plaintiff Rowan received a call to his cell phone from 808-795-5075.

47.     When Plaintiff Rowan answered this call, he said "hello" but there was dead silence before the call automatically disconnected.

48.     Plaintiff Rowan then received the following unsolicited calls to his cell phone:

- April 2, 2026 from 808-795-5075;

- April 7, 2026 from 808-788-3991;

- April 8, 2026 from 808-795-5294;

- April 12, 2026 from 808-755-4482; and

- April 14, 2026 from 808-795-5294.

12

49.     On April 18, 2026 at 1:06 PM, Plaintiff received an unsolicited call to his cell phone from 808-795-6626.

50.     Plaintiff Rowan recognized the 808 (Hawaii) area code followed by 795 from the previous missed calls so he answered the call.

51.     When the call was answered, Plaintiff Rowan could hear the sound of automated piano music playing.

52.     The piano music was interrupted by a "bloop" sound, after which an employee came on the line asking if she was speaking to Nathan.

53.     The employee introduced herself as Mel from Aloha Hawaii and claimed that Plaintiff Rowan attended a seminar at one of their sister properties in Orlando.

54.     Plaintiff has never attended a seminar presentation in Orlando, but he played along to find out who was calling his cell phone number,

55.     Mel claimed that nothing was being sold to Plaintiff Rowan and that she was not selling a timeshare. She clarified that they have a website that is similar to Expedia and Priceline that features discounted travel packages.

56.     Mel said that Plaintiff would receive a free gift if he would attend a webinar.

57.     Plaintiff Rowan agreed to attend the webinar and he provided his email address.

58.     After the call, Plaintiff received the following email:

---------- Forwarded message ---------
From: **KRISTINE HAWAII** <kristinehawaii44@gmail.com>
Date: Sat, Apr 18, 2026 at 1:19 PM
Subject: ALOHA WEBINAR SHOWTIME
To: <█████████████>

  This is KRISTINE of Aloha Hawaii Travel, and per your request with our booking agent, we've scheduled your 45 minutes webinar
As your reward for spending your time with us, you'll receive your choice of one of the complimentary gifts listed below.

- 4-DAYS and 3-NIGHTS HOTEL STAY WITH OVER 50 HOTEL DESTINATION ALL OVER STATES
-5 Days / 4 Nights Cruise for 2 adults on cruise lines such as  Bahamas, Cozumel, Ensenada
- $500 TRAVEL SAVINGS CARD

TO ATTEND, simply click on the link below.

JOIN MEETING WITH THIS LINK :  https://zoom.us/j/8088001202
Meeting ID: 808 800 1202
Password: 8080

Keep in mind that we are NOT a TIMESHARE, not even close. We are simply promoting a website that's like Expedia and Priceline; however, our site offers travel related services and more, at WHOLESALE cost.

So, if saving up to 80% sounds good to you, then you won't want to miss this. We're like the Costco, and Sam's Club of the travel industry, but way better! This demo will change the way you think about your future travels.

Be sure to check out our website  https://www.alohahawaiitours.com/ for details.

We look forward to meeting you. Never pay retail again, Mahalo!

Cheers,
Kristine Edullantes
Travel Support Specialist

Join our Cloud HD Video Meeting
https://zoom.us

Aloha Hawaii Tours | Oahu's Top Rated Island Tours | Honolulu
https://www.alohahawaiitours.com

Join our Cloud HD Video Meeting
https://zoom.us

Aloha Hawaii Tours | Oahu's Top Rated Island Tours | Honolulu
https://www.alohahawaiitours.com

59.    As per the screenshot above, the email identifies the company name Aloha Hawaii Tours.

60.    Plaintiff Rowan received a call to his cell phone from 424-458-9033 on April 18, 2026 at 1:49 PM.

14

61.     When Plaintiff Rowan answered this call, he was asked to confirm that he was joining the webinar.

62.     Plaintiff clicked on the link for the webinar that he received by email.

63.     An agent named Maria introduced herself and did a check-in with Plaintiff, and then moved Plaintiff into a virtual room with an agent named Julian who confirmed Plaintiff's phone number, email, and whether his household earns over $50k.

64.     The webinar switched to a presentation from a speaker named Andrew Grant who introduced the attendants to Arrivia.

65.     Grant spent the next 45 minutes soliciting a membership to Arrivia:



66.     The Arrivia membership would provide discounted travel and discounted airfare to Arrivia members.

67.     The presentation included a walkthrough of the Arrivia membership site that was hosted on members.alohahawaiitourandtravel.com.

68.     After the presentation, Plaintiff was told that an agent would call him to discuss the Arrivia membership and to close the sale.

15

69.     Plaintiff received a call to his cell phone from 424-458-9033 shortly after the presentation, but the call was not answered.

70.     Plaintiff Rowan has never provided his cell phone number to the Defendants and has never consented to receive calls to his cell phone from the Defendants.

71.     In fact, as stated above, Plaintiff Rowan already had a TCPA-related lawsuit against Arrivia that alleged unsolicited telemarketing calls.[16]

72.     Plaintiff has never had any business relationship with either Defendant. Plaintiff has never purchased any products or services from Defendants, never inquired about their products or services, and never provided his contact information to either Defendant. The Defendants' claim that Plaintiff attending a seminar in Orlando is false, as Plaintiff never attended any such seminar.

73.     The unauthorized solicitation telephone calls that Plaintiff received from or on behalf of the Defendants has harmed Plaintiff Rowan in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

74.     Seeking redress for these injuries, Plaintiff Rowan, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA and MDTCPA.

## CLASS ALLEGATIONS

75.     Plaintiff Rowan brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendants called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason the Defendants called Plaintiff.

---

[16] Case 1:2021cv00587 – Rowan v. Arrivia Inc. et al – filed 04/27/2021

16

**MDTCPA Class:** All persons who: (1) are residents of Maryland; (2) had their cellular telephone number registered on the National Do Not Call Registry for at least thirty-one days prior to receiving the call; (3) received more than one telephone solicitation from the Defendants, within any twelve-month period; (4) within four years prior to the filing of this Complaint.

76.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which any of the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff Rowan anticipates the need to amend the Class definitions following appropriate discovery.

77.     **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes because he received calls as part of the same campaign resulting in calls to other Class members.

78.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     whether the Defendants placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

17

(b)      whether the calls constitute a violation of the TCPA and MDTCPA;

(c)      whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

79.    **Adequate Representation**: Plaintiff Rowan will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Rowan has no interests antagonistic to those of the Classes, and the Defendants have no defenses unique to Plaintiff. Plaintiff Rowan and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Rowan nor his counsel have any interest adverse to the Classes.

80.    **Appropriateness**: This class action is also appropriate for certification because the Defendants acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Rowan Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Rowan and the Do Not Call Registry Class)**

81.     Plaintiff repeats and realleges paragraphs 1-80 of this Complaint and incorporates them by reference herein.

82.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

83.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

84.     The Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Rowan and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

85.     The Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff Rowan and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above.

86.     As a result of Defendants' conduct as alleged herein, Plaintiff Rowan and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are

20

entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

87. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Maryland Telephone Consumer Protection Act**
**(Md. Code Ann., Com. Law §§ 14-3201–14-3202)**
**(On Behalf of Plaintiff Rowan and the MDTCPA Class)**

88. Plaintiff repeats and realleges paragraph 1-80 of this Complaint and incorporates them by reference herein.

89. The Maryland Telephone Consumer Protection Act ("MDTCPA"), Md. Code Ann., Com. Law § 14-3201, makes it unlawful to violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, as implemented by the Federal Communications Commission, or the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101–6108, as implemented by the Federal Trade Commission.

90. The MDTCPA provides a private right of action and authorizes a plaintiff to recover the greater of actual damages or $500 for each violation. Md. Code Ann., Com. Law § 14-3202(b)(2). Each prohibited telephone solicitation and each prohibited practice during a telephone solicitation constitutes a separate violation. Id. § 14-3202(c).

91. Plaintiff is a resident of Maryland who received the telephone solicitations described herein at his Maryland residence.

92. The Defendants initiated telephone solicitations to Plaintiff and members of the MDTCPA Class on their cellular telephones without their prior express written consent, in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and the FCC's implementing regulations, and thereby violated the MDTCPA.

93.     Additionally, Plaintiff's cellular telephone number was registered on the National Do Not Call Registry for more than thirty-one days prior to receiving Defendants' telephone solicitations. The Defendants initiated more than one telephone solicitation to Plaintiff and members of the MDTCPA DNC Subclass within a twelve-month period without their prior express written consent and without an established business relationship, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c), and thereby violated the MDTCPA.

94.     As a result of Defendants' violations of the MDTCPA, Plaintiff and members of the MDTCPA Class are entitled to recover the greater of their actual damages or $500 for each violation, plus reasonable attorney's fees.

95.     To the extent Defendants' violations were knowing or willful, Plaintiff and members of the MDTCPA Class are entitled to recover treble damages of up to $1,500 per violation pursuant to 47 U.S.C. § 227(b)(3), as incorporated by the MDTCPA.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Rowan individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of damages and costs;

c) An order declaring that Defendants' actions, as set out above, violate the TCPA and MDTCPA;

d) An injunction requiring the Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e)  Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Rowan requests a jury trial.

**NATHAN ROWAN**, individually and on behalf of all others similarly situated,

DATED this 12th day of August, 2026.

By: /s/ John McGowan
Managing Member
Kinner & McGowan, PLLC
413 East Capital St. SE
Washington, DC 20003
(202) 846-7148
jmcgowan@kinnermcgowan.com
kinnermcgowan.com

*Local Counsel for Plaintiff and the putative Class*

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*